UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PRISCILLA STEWART

VERSUS

SMITTY'S SUPPLY, INC.

CIVIL ACTION

NO. 18-10058

SECTION "R" (5)

## ORDER AND REASONS

Before the Court is defendant Smitty's Supply, Inc.'s motion for summary judgment.[1]  Because plaintiff cannot establish an issue of material fact, and because many of her claims are time-barred, the Court grants defendant's motion.

## I.    BACKGROUND

This case arises out of Priscilla Stewart's termination from her job at Smitty's Supply.  While employed for defendant's sister company, Stewart suffered an injury to her knee, was reassigned to light work, and was transferred to Smitty's Supply.[2]  Four months later, Smitty's Supply terminated Stewart.[3]  The purported reason for the termination was "re-

---

[1]    R. Doc. 35.
[2]    R. Doc. 1 at 2 ¶¶ 4-6.
[3]    *Id.* at 2 ¶ 7.

organization and consolidation."[4]  Stewart avers that this reason was only pretextual, and that she was replaced by a younger, non-disabled employee.[5] After receiving a right to sue letter from the EEOC, Stewart filed a complaint against Smitty's Supply alleging wrongful termination.[6]  Stewart's complaint alleges a host of causes of action, including claims under the American with Disabilities Act, the Age Discrimination in Employment Act, and the Louisiana Employment Discrimination Act.[7]  This Court previously dismissed Stewart's claims for intentional infliction of emotion distress and Louisiana Article 2315.[8]  Smitty's Supply filed a motion for summary judgment, arguing the Court should dismiss Stewart's remaining claims.[9]

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069,

---

[4]    *Id.*
[5]    *Id.* at 2 ¶¶ 8-9.
[6]    *Id.* at 3 ¶ 10.
[7]    *Id.* at 3 ¶ 11.
[8]    R. Doc. 26.
[9]    R. Doc. 35.

1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by

either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III.  DISCUSSION

Defendant moves to dismiss plaintiff's remaining claims in this litigation including: (1) a claim of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*.; (2) a claim of disability discrimination under the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq*.; and (3) a claim under the Louisiana Employment Discrimination Act, La. R.S. 23:301, *et seq*.  The Court addresses each claim in turn.

### A.    Time-Barred Federal Claims

Defendant asserts that plaintiff's federal claims are time-barred because she filed her suit later than ninety days after receipt of her right-to-sue letter from the EEOC.  Under the ADEA and ADA, a plaintiff has ninety days to file a civil action after receipt of such a right-to-sue letter from the EEOC.  *See* 29 U.S.C. §626(e) (requiring suit within ninety days for ADEA claims); *Dade v. Sw. Bell Tel. Co.*, 942 F. Supp. 312, 317 (S.D. Tex. 1996) (holding that the ninety-day statute of limitations after receipt of the right to sue letter in Title VII also applies to ADA claims).  "This requirement to file a lawsuit within the ninety-day limitation period is strictly construed." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002).  The Fifth Circuit has held that when the date on which a right-to-sue letter was actually

received is either unknown or disputed, presumption of receipt within three to seven days of mailing is appropriate. *Id.* at 379-80.

Stewart's right-to-sue letter explicitly informs her of the limitations period. It states: "Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost."[10] The letter also indicates that it was mailed on June 7, 2018, or 172 days before plaintiff filed suit.[11] Plaintiff does not brief this issue, but she asserts in her affidavit that she "received my 'Right to Sue' letter on July 28, 2018."[12] July 28, 2018, is exactly ninety days before plaintiff filed suit.[13] Plaintiff also attaches two documents to support this assertion. First, she attaches an electronic calendar entry from July 28, 2018, which states: "Received EEOC right to sue [sic] letter today, after asking them to send Me [sic] the letter that I never received."[14] Second, she attaches an email she purportedly sent the EEOC on July 4, 2018, that states: "When will you issue my right to sue letter? MY [sic] case was closed 06/07/2018."[15]

---

[10]    R. Doc. 35-14 at 1 (emphasis in original).

[11]    *Id.*

[12]    R. Doc. 45-3 at 3.

[13]    *See* R. Doc. 1 (complaint filed on October 26, 2018).

[14]    R. Doc. 45-3 at 6. Defendant has moved to exclude this exhibit at trial as it was not produced in discovery, despite being responsive to defendant's requests for production. *See* R. Doc. 56.

[15]    *Id.* at 5.

This evidence fails to create an issue of material fact as to whether plaintiff's suit was filed timely. Significantly, the plaintiff provides no evidence that she received any type of communication from the EEOC on July 28, 2018, or any date near there, sending a right-to-sue letter. Nor does she attach any indication that the EEOC received or responded to her July 4, 2018, email. Indeed, the only evidence that the EEOC received an email from plaintiff is an email plaintiff sent on October 25, 2018. In that email, Plaintiff requested her "entire file" from the EEOC on the day before she filed suit.[16] The EEOC responded the same day, resending, *inter alia*, the right-to-sue letter and stating: "The Right to Sue was mailed to your and your attorney's attention on June 7, 2018."[17]

And Stewart's assertions in her affidavit, and the calendar entry she attaches to support those assertions, contradict her deposition testimony. At her deposition, plaintiff was asked point blank whether she remembered when she received her right-to-sue letter. Despite the unqualified affidavit asserting that she received the letter on July 28, 2018, she responded: "I don't know the date."[18] Plaintiff was also asked whether she knew the "date

---

[16] *See* R. Doc. 35-3 at 53.
[17] *Id.* at 54.
[18] R. Doc. 35-3 at 37.

of the letter that was originally sent" to her.[19]  Plaintiff stated she did not know the date of the letter, even though the right-to-sue letter that she says she received in her affidavit states on its face that it was sent on June 7, 2018.[20]  When a plaintiff's deposition testimony contradicts her sworn affidavit, it may be disregarded under the sham-affidavit rule.  That rule states that "a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment."  *Doe ex rel Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).  Thus, where an affidavit diverges from deposition testimony, courts may disregard the affidavit at the summary judgment stage.  *See, e.g., Powell v. Dallas Morning News, L.P.*, 776 F. Supp. 2d 240, 247 (N.D. Tex. 2011) ("Courts have consistently disregarded such sham affidavits as nothing more than an attempt to 'manufacture a disputed material fact where none exists.'" (citing *Alberton v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984))).  Here, there is a contradiction between plaintiff's deposition testimony and her sworn affidavit which merits application of the sham-affidavit rule.

Having disregarded the portion of plaintiff's affidavit regarding the date she received her right-to-sue letter, the only remaining evidence is

---

[19]     *Id.* at 36.
[20]     *Id.*; *see also* R. Doc. 35-14 at 1.

plaintiff's July 4, 2018, email to the EEOC requesting the letter. But this email does not support the proposition that plaintiff received the letter on July 28. Rather it provides only some evidence that she may have received it after July 4, 2018.

The letter is therefore entitled a presumption of receipt within seven days of the date on which it states it was sent. *See Taylor v. Books A Million, Inc.*, 296 F.3d at 379-80. Here, that presumptive date would be June 14, 2018. Because plaintiff's suit was not filed until October 26, 2018, more than ninety days after June 14, 2018, plaintiff's federal claims are barred as untimely.

### B. Age Discrimination in Employment Act

Notwithstanding the Court's holding that plaintiff's federal claims are time-barred, the Court further considers defendant's arguments that plaintiff's age discrimination claim should be dismissed on the merits.

In the Fifth Circuit, age discrimination claims are analyzed under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). Under this framework, plaintiff must first establish a prima facie case. To establish a prima facie case of age discrimination, a plaintiff must show that "(1) he was discharged; (2) he was qualified for the

position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside of the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson*, F.3d at 378. Once a plaintiff has established a prima facie case of discrimination, the "burden shifts to the employer to produce a legitimate, nondiscriminatory reason for her termination." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). And should an employer produce a legitimate, non-discriminatory reason for termination, the burden then shifts back to plaintiff, who must produce "substantial evidence that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Id.* Even if pretext is shown, it may be insufficient to establish discrimination "when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision" or "when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred." *Id.* "A decision as to whether judgment as a matter of law is appropriate ultimately turns on 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a

matter of law.'" *Id.* at 579 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

It is undisputed that (1) Stewart was discharged, (2) Stewart was qualified for the position, and (3) Stewart was within the protected class at the time of discharge. It is therefore only the fourth element—whether Stewart was replaced by someone younger or otherwise discriminated against because of her age—that is disputed.

Stewart claims that she was replaced by a younger employee named Veronica Berton.[21] Defendant counters that plaintiff has no evidence to support this assertion because she has no personal knowledge that Berton took over her role.[22] But Stewart attaches to her opposition a declaration from another witness, Michael Wheat, in which he declares: "I can state, from personal knowledge and personal observation at the time, that Veronica Berton took over the position formerly held by Plaintiff, Priscilla Stewart, after Priscilla was fired." Plaintiff therefore does have evidence on which she can rely to establish that Veronica took over her duties. Although

---

[21]    *See* R. Doc. 1 at 2 ¶ 8; R. Doc 45 at 1-2; R. Doc. 45-3 at 2 ¶ 14.
[22]    *See* R. Doc. 35-2.

defendant disputes this element,[23] Wheat's affidavit is sufficient to create a genuine dispute of fact as to whether Stewart can establish a prima facie case.

Once a plaintiff has established a prima facie case, the burden shifts to defendant to provide a legitimate, nondiscriminatory reasons for the plaintiff's termination.    Here, defendant asserts that plaintiff was underperforming as a label clerk and had committed errors that harmed the company financially and reputationally.    To support this argument, defendant points to a personnel action form, which notes that "Priscilla's job performance has not been up to par" and cites to a particular instance where incorrect labeling resulted in the shipment of the wrong product abroad.[24] Defendant also cites to the affidavits of Christy Corne, Smitty's human resources manager, and Steve Bennett, plaintiff's supervisor, noting Stewart's poor job performance.[25]   Poor performance is a legitimate reason

---

[23]    *See* R. Doc. 35-2 at 9-10 (arguing that plaintiff cannot establish this case because "Plaintiff was not replaced at Smitty's by anyone, much less an individual within the protected class or younger" and that "Plaintiff lacks any competent summary judgment evidence that Plaintiff was otherwise fired because of Plaintiff's age.").  In disputing this element, defendant identifies as evidence various affidavits that state that plaintiff's position was eliminated rather than filled by a younger employee. *See, e.g*., R. Docs. 35-8, 35-9, 35-10.  Defendant also points to plaintiff's notice of termination, stating that the position will be allocated across cell leads.  *See* R. Doc. 35-8 at 9.

[24]    R. Doc. 35-3 at 41.

[25]    *See* R. Doc. 35-9 at 1 ¶ 5 (Corne affidavit stating: "Stewart continuously performed below standards and made a number of errors that were

for termination.  *See Ajao v. Bed Bath & Beyond, Inc.*, 265 Fed. App'x 258, 263 (5th Cir. 2008).

Defendant further asserts that the limited tasks associated with Stewart's role as a label clerk made her position a prime candidate for consolidation.   Plaintiff's supervisor, Bennett, reached out to other employees to see if any additional positions at the company were available for plaintiff, but was told none were.[26]   Defendant states that because plaintiff was not a candidate for absorbing additional tasks, she was terminated when her position was eliminated and consolidated for business purposes.  To support this assertion, defendant points to the affidavits of Bennett, Corne, and Tiffany Cessionnie, Smitty's EVP Finance and Compliance.[27]   It also points to the personnel action form terminating Stewart.  That form states:

---

problematic for Smitty's"); R. Doc. 35-8 at 2 ¶¶ 10, 15 (Bennett affidavit stating that "[f]rom the outset of her employment as a labeling clerk, Stewart made numerous errors by printing the wrong product labels and/or printing labels on the wrong color paper" and that Bennett "did not see any improvement in Stewart's performance").

[26]   R. Doc. 35-8 at 3 ¶ 18 (Bennett affidavit stating that "he contacted other individuals within Smitty's in an attempt to locate another job to which Stewart could be assigned").

[27]   R. Doc. 35-8 at 3 ¶¶ 17, 20 (Bennett affidavit stating that "Stewart's job performance was not satisfactory and her role did not require a full time employee to perform the labeling asks.  Therefore he spoke with supervisors regarding the termination of Stewart's position and consolidation of her tasks across cell leads" and that "[a]fter her termination, Stewart's labeling

> This termination comes due to re-organization and consolidation. The position duties and responsibilities will be allocated across the cell leads and office manager position for which is [sic] already filled. Our efforts to assist Mrs. Stewart to find employment will extend past this termination with letter(s) of recommendations [sic] and contact information to praise her time and efforts here at Smitty's Supply.[28]

The act of eliminating a position and reassigning those roles to other employees for cost-saving reasons is a legitimate business purpose. *See, e.g., Kean v. Jack Henry & Assocs., Inc.*, 577 F. App'x 342, 352 (5th Cir. 2014).

Defendant has therefore established a legitimate, non-discriminatory reason for plaintiff's discharge. The burden then shifts back to plaintiff to establish that this reason was pretextual, and that age discrimination was in fact the true reason for her termination. Plaintiff has not created a genuine issue of fact.

---

tasks were performed by various cell leads"); R. Doc. 35-9 at 2 ¶¶ 10, 12 (Corne affidavit stating that "[b]ased on the limited role of a labeling clerk, Smitty's determined that the role should be eliminated and the role's tasks assigned to other employees" and that "the decision was made to terminate the labeling clerk position and spread the tasks across cell leads and other employees"); R. Doc. 35-10 at 1 ¶ 6 (Cessionnie affidavit stating that "[c]oupling the inefficiency of one employee solely performing the task of a labeling clerk with Stewart's substandard job performance, Smitty's decided to reorganize and consolidate the labeling clerk tasks across cell leads and executive production coordinator.").

[28] R. Doc. 35-3 at 46.

Plaintiff looks only to three pieces of evidence to support her argument that defendant's explanation is pretextual. First, she relies upon the same statement from Wheat's declaration that she used to establish her prima facie case.[29] Second, she alleges the numerous errors she made on the job were the fault of Smitty's Supply, as she was never properly trained.[30] Third, she relies upon a statement in her own affidavit that Steve Bennett told her he did not know why she was being terminated.[31]

None of this evidence establishes that a material disputed fact exists with respect to defendant's purported legitimate business explanation. Wheat's declaration states that he witnessed Berton take over Stewart's position doing labeling, but this fact is compatible with defendant's explanation that various other employees, potentially including Berton, took over Stewart's role of labeling clerk. Indeed, defendant points to deposition testimony of plaintiff, in which she states that Berton was doing labeling work even before plaintiff was terminated.[32]

---

[29] R. Doc. 45-1 at ¶ 4.

[30] *Id.* ("They subsequently required me perform [the task of labeling] without training or direction.").

[31] R. Doc. 45-3 at 3 ¶ 22 ("Contrary to Steve Bennett's statement in his affidavit, he told me he did not know why I was being fired.").

[32] R. Doc. 51-1 at 5.

Plaintiff's assertions that she was not adequately trained are unsupported, and contradictory to many facts in the record, including the fact that Smitty's Supply asked Stewart to train Berton, as well as Bennett's affidavit stating that a subordinate coached plaintiff.[33]  Moreover, Stewart does not debate the errors she made while working on the job that led her to become a candidate for termination.  Indeed, contrary to plaintiff's assertion that she should not have been fired after only one written warning, Smitty Supply's employee handbook states a single incident may be grounds for termination.[34]

Finally, Stewart's assertion that Bennett stated he did not know why she was being terminated at one point does not create an issue of material fact.  Her assertion is contradicted by the fact that on the date of her discharge she was presented with a personnel action form notifying Stewart of her termination that set forth the same legitimate reason defendant now asserts for having terminated Stewart.[35]  Bennett is listed as the contact

---

[33]    R. Doc. 35-8 at 2 ¶ 11.

[34]    *See* R. Doc. 45-3 at 9 ("Progressive discipline is discretionary and Smitty's Supply Inc. retains the right to discharge employees for a single incident if, in the exclusive opinion of Smitty's management, the offense is sufficiently serious to warrant such action.").

[35]    *See* R. Doc. 35-3 at 47 ("Mrs. Priscilla Stewart's services are no longer needed at SSI.  This termination comes due to re-organization and consolidation.  The position duties and responsibilities will be allocated across cell leads and office manger position for which is already filled.").

person at the bottom of this form and it bears his initials.[36]  And Christy

Corne, Smitty Supply's human resource manager, stated that she was part of

the decision to eliminate the role of label clerk as the position did not

encompass enough work for a full-time employee.[37]  Indeed, plaintiff does

nothing to controvert the support for Smitty's explanation offered in Corne

or Cessionnie's affidavits, or in her notice of termination bearing Bennett's

name.  At best, any inconsistency in Bennett's statement "raise[s] only a weak

issue of fact and therefore cannot survive summary judgment." *Churchill v.*

*Texas Dep't. of Criminal Justice*, 539 F. App'x 315, 320-21 (5th Cir. 2013);

*see also Smith v. Hewlett-Packard Co.*, 512 F. Supp. 2d 587, 602 (N.D. Tex.

2007) (holding that evidence of stray remarks could at best create a weak

issue of fact that racial discrimination occurred in light of abundant and

uncontroverted evidence to the contrary, and therefore the claim of

discrimination could not survive summary judgment).

---

[36]     *Id.*

[37]     *See* R. Doc. 35-2 at 2 ¶¶ 7, 10 (Corne affidavit stating that "[d]uring
Stewart's employment as label clerk, it became clear the position of labeling
clerk does not encompass enough work to justify the tenure of a full time
employee without additional tasks being assigned to that employee" and that
"[b]ased on the limited role of a labeling clerk, Smitty's determined that the
role should be eliminated and the role's tasks be assigned to other employees
in the company.  [Corne] was part of the discussion and determined that the
role of labeling clerk should be eliminated.").

Nor does plaintiff explain how any of this evidence shows that defendant's explanation is pretextual or otherwise unworthy of credence. And disregarding plaintiff's conclusory assertions to the contrary, there is no evidence in the record that allows for an inference of age discrimination. Indeed, Stewart was hired at the age of 55,[38] only three years before her termination. And Bennett, who took part in the decision to terminate plaintiff, is approximately plaintiff's age.[39] Courts have held that when an employer hires an older employee, there is a presumption against age discrimination, particularly when they are terminated by an employee of the same age. *See, e.g.*, *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996); *see also Fitzgerald v. Action, Inc.*, 521 F.3d 867, 877 (8th Cir. 2008) ("We have noted it is unlikely a supervisor would hire an older employee and then discriminate on the basis of age, and such evidence creates a presumption against discrimination.").

Because the evidence Stewart points to does not create an issue of material fact as to the legitimacy of defendant's proffered explanation for her termination, she is left with only her belief that she was terminated due to

---

[38] *See* R. Doc. 35-3 at 16 (Plaintiff's deposition testimony stating she was hired on March 14, 2014).

[39] *See* R. Doc. 35-8 at 1 ¶ 3 (Bennett affidavit stating that "he is currently 59 years old").

her age.  And subjective belief of discrimination, however genuine, cannot be the basis of judicial relief.  *See Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991).  Plaintiff's age discrimination claim is therefore also dismissed on the merits.

## B.    Americans with Disabilities Act

Plaintiff also alleges a claim under the Americans with Disabilities Act.[40]  It is unclear from either from the complaint or the parties' briefing under which theory of ADA liability plaintiff brings her claim.  Plaintiff asserts in her complaint that she "believes and therefore avers that she was terminated due to . . . an actual or perceived disability and/or retaliation for having sough a reasonable accommodation and/or all of the foregoing."[41] The Court reads this paragraph broadly as asserting three claims under the ADA:  (1) a claim for failure to reasonably accommodate a disability, (2) a claim for disability discrimination, and (3) a retaliation claim.  The Court addresses each in turn.

### 1.    *Failure to Exhaust Administrative Remedies*

The Court first considers defendant's arguments that plaintiff's claims under the ADA should be dismissed for failure to exhaust administrative

---

[40]    R. Doc. 1 at 3 ¶ 11(A).
[41]    R. Doc. 1 at 2 ¶ 9.

19

remedies.  In her Charge of Discrimination with the EEOC, plaintiff checked only a box noting that discrimination was based on "age" and left "disability" and "retaliation" blank.[42]  Indeed, plaintiff acknowledged at her deposition that she did not properly fill out the form.[43]  Nor does the right to sue letter from the EEOC refer to either an age discrimination or a retaliation claim.[44] In her Charge of Discrimination with the EEOC, plaintiff mentions her on-the-job injuries in explaining her role as a label clerk, but does not allege any discrimination based on disability.[45]

Although plaintiff acknowledges she failed to properly check the appropriate box for any claim other than age discrimination on her Charge of Discrimination with the EEOC, she argues that this failure is not fatal to her claim.  Rather, she asserts that because the text of the charge detailed her injuries, she maintained this claim when she filed her charge of discrimination.  Plaintiff also points to an EEOC questionnaire, in which she

---

[42]    *See* R. Doc. 35-11 at 1.
[43]    *See* R. Doc. 35-3 at 31 ("So this form was probably not filled out the way it should have been.  Because I should have probably marked 'retaliation' and 'disability,' as well as any other thing I could put on there. But I didn't do that.").
[44]    *See* R. Doc. 35-14 at 1.
[45]    *See* R. Doc. 35-11 at 1.

simply filled out: "Reason for Complaint: I am 40 years of age or older, A [sic] disability."[46]

Plaintiff is correct that failure to check a certain box on the Charge of Discrimination form does not necessarily merit dismissal of a claim for failure to exhaust administrative remedies. *See Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006) ("[W]e do not require that a Title VII plaintiff check a certain box or recite a certain incantation to exhaust his or her administrative remedies before the proper agency."). Courts instead focus on the text of the Charge of Discrimination. *Id.* But here, plaintiff fails to allege in her Charge of Discrimination facts that would reasonably trigger an investigation by the EEOC for any claims under the ADA. Rather, the only mention of her injuries in the Charge of Discrimination details how defendant accommodated plaintiff's injuries. The lack of any reasonable accusation of disability discrimination, failure to accommodate, or retaliation in the Charge of Discrimination—even when read broadly— coupled with plaintiff's failure to check the box for discrimination demonstrates a failure to properly exhaust administrative remedies.

The cases plaintiff cites to resist this conclusion are inapposite. For example in *Rivera v. State of Louisiana*, No. 04-3327, 2006 WL 901826

---

[46]  R. Doc. 45-3 at 4.

(E.D. La. Mar. 31, 2006), a court found that a plaintiff had not failed to exhaust her administrative remedies for a racial discrimination claim where she failed to check "race" on the Charge of Discrimination but "specifically alleged in the text of the charge that she had been called various racially derogatory names." *Id.* at *4. Here, there were no specific allegations of disability discrimination. Nor does *Harris v. Honda*, 213 F. App'x 258 (5th Cir. 2006) support plaintiff's position. Indeed, that case stands for the proposition that an intake questionnaire—the only document on which plaintiff seems to mention a disability—is not sufficient to exhaust administrative remedies. *Id.* at 261-62. Plaintiff's claim for disability discrimination is therefore barred for failure to exhaust administrative remedies.

### 2. *Reasonable Accommodation Claim*

Although the Court holds that plaintiff's claims under the ADA are both time-barred and barred for failure to exhaust administrative remedies, the Court also considers defendant's arguments that plaintiff cannot state a prima facie case under the ADA. In order to maintain a claim for failure to reasonably accommodate a disability under the ADA, a plaintiff must prove that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered

employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 442 (5th Cir. 2017) (citing *Feist v. La., Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)).

A "qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To be considered "disabled" under the ADA, a plaintiff must suffer from "a physical or mental disability that substantially limits one or more major life activities of such individual; . . . [have] a record of such an impairment; or . . . be[] regarded as having such an impairment." *Id.* § 12102(1). Major life activities include standing, lifting, and bending. *Id.* § 12102(2)(A). An employee may be temporarily disabled in that they are at one point disabled, but later recover and no longer suffer from the disability. An adverse employment event after recovery from a disability provides no grounds for a failure to accommodate claim under the ADA, as there remains no disability to accommodate. *See, e.g., E.E.O.C. v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 618-19 (5th Cir. 2009) (noting that some disabilities are temporary and nonpermanent).

Plaintiff alleges she suffered an on-the-job injury at her previous job at Big 4 Trucking that resulted in partial loss of use and a disability related to that injury.[47] Plaintiff also alleges in her affidavit a second disability which took place after she began working for defendant.[48] Defendant, for its part, does not dispute that plaintiff was at one point disabled by her injuries. But defendant *does* dispute that plaintiff was disabled at the time of her termination. It points to a work report noting that plaintiff had been "released to full duty by her doctor."[49] It also points to portions of plaintiff's deposition testimony in which she states that she got better and was able to go back to work, was able to work without any issues, and could come back to a full-time office job.[50]

Plaintiff counters this evidence only by making the conclusory statement that she was still disabled at the time that she was terminated. Plaintiff points to no documents in the record—either in her deposition testimony, medical records, or any other employment record—to support this argument. Her only support is one sentence in her affidavit, which states: "I continue to suffer limitations due to my knee injury."[51] This is a

---

[47] R. Doc. 1 at 2 ¶ 5.
[48] *See* R. Doc. 45-3 at 2 ¶ 10.
[49] R. Doc. 35-3 at 40.
[50] *See* R. Doc. 35-3 at 18, 19, 25.
[51] R. Doc. 45-3.

conclusory statement of fact that cannot defeat a motion for summary judgment, especially when defendant has pointed to plaintiff's own testimony and employment records stating she was cleared for duty. *See Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)). Therefore, the Court cannot find plaintiff was disabled at the time of her termination, and this claim cannot survive summary judgment.

### 3. *Disability Discrimination Claim*

The Court next considers plaintiff's ADA claim for disability discrimination. In order establish a prima facie discrimination claim under the ADA, Stewart must prove (1) that she has a disability; (2) that she was qualified for the job; and (3) that she was subject to an adverse employment decision on account of her disability. *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 852-53 (5th Cir. 1999). In her opposition, plaintiff does not seem to contest the dismissal of her disability discrimination claim. She instead focuses her arguments solely on the reasonable accommodation claim. And as discussed above, plaintiff cannot establish the first element required for this claim—that she was disabled at the time of her termination. This failure alone merits dismissal of this claim.

Moreover, plaintiff cannot establish the third element of a disability discrimination claim—that she was subject to an adverse employment decision *on account of her disability*. The sole piece of evidence that plaintiff puts forth to establish a connection between her purported disability and her termination is one paragraph in her affidavit, in which she conclusorily states: "I believe I was fired due to an actual or perceived disability . . . ."[52] But plaintiff points to no evidence to support this belief. And the plaintiff's subjective belief of discrimination is not sufficient to survive summary judgment. *See Little*, 924 F.2d at 96. And more generally, this unsupported allegation sets forth a conclusory fact, which also is not sufficient to defeat a motion for summary judgment. *See Galindo*, 754 F.2d at 1216.

### 4. *Retaliation Claim*

Defendant also argues that plaintiff fails to state a prima facie case under the ADA for retaliation. Plaintiff's opposition contains no response to defendant's arguments regarding dismissal of the retaliation claim, thereby tacitly consenting to its dismissal.

In any event, defendant is correct that plaintiff cannot maintain a claim for retaliation under the ADA. "To establish a prima facie case of retaliation under the ADA or Title VII, a plaintiff must show that (1) she participated in

---

[52]    R. Doc. 45-3 at ¶ 17.

an activity protected under statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. La., Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

As with plaintiff's disability discrimination claim, plaintiff's retaliation claim fails because she cannot establish a causal connection between the protected activity and her termination. In her opposition, plaintiff cites to no evidence in the record supporting a retaliation claim. Indeed, in the entire record before the Court, the only support for any sort of a retaliation claim is one conclusory assertion in plaintiff's affidavit.[53] This is insufficient to survive summary judgment for the same reason plaintiff's subjective belief and assertion of a conclusory fact were insufficient to support her disability discrimination claim.

### C. Louisiana Employment Discrimination Law

Defendant moves to dismiss plaintiff's claim under the Louisiana Employment Discrimination Law. The LEDL prohibits both age and disability discrimination. *See* La. R.S. 23:312 (prohibiting age discrimination); La. R.S. 23:323 (prohibiting disability discrimination).

---

[53] R. Doc. 45-3 at 2 ¶ 17 ("I believe I was fired due to an actual or perceived disability, due to my age and in retaliation for making a workers compensation claim.").

With respect to claims of age discrimination, the LEDL is modeled after federal law and should be construed in light of federal precedent. *See, e.g.*, *O'Boyle v. La. Tech Uni.*, 741 So. 2d 1289, 1290 (La. App. 2 Cir. 1999) (holding that the Louisiana Act "mirrors the federal ADEA and should be construed in light of federal precedent."). Indeed, Louisiana courts apply the same *McConnell Douglas* burden-shifting framework when analyzing claims of age discrimination under the Louisiana law. *See Taylor v. Oakbourne Country Club*, 663 So.2d 397, 383-84 (La. App. 3 Cir. 1995). For the reasons explained above, plaintiff's claim for age discrimination under the ADEA cannot pass muster at the summary judgment stage. And for the same reasons, plaintiff's LEDL claim for age discrimination cannot survive summary judgment and must be dismissed. The same is true for plaintiff's claims of disability discrimination under the LEDL. *See, e.g., Barton v. Checkers Drive-In Rests., Inc.*, No. 11-186, 2011 WL 1193061, at *3 (E.D. La. March 28, 2011) ("Because Louisiana's statute is based on the ADA, the result of the court's analysis under either statute must, necessarily, be the same.").

Defendant also moves to dismiss plaintiff's LEDL claim for disability discrimination on the grounds that it is prescribed. The LEDL contains a one-year prescriptive period, but allows for tolling if a federal action is pending before the EEOC. It states:

> Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights.

La. R.S. 23:303(D).

Plaintiff was terminated in May 2017,[54] but did not bring suit until October 2018.[55] Therefore, she filed her claim seventeen months after her termination, and it is prescribed unless her claim was tolled. Plaintiff asserts that her claim was tolled by her filing a Charge of Discrimination with the EEOC. However, as explained above, the Court has found that plaintiff's Charge of Discrimination covered only age discrimination, not disability discrimination. And because disability discrimination was not within the scope of her Charge of Discrimination with the EEOC, she is unable to take advantage of the statute's tolling exception with respect to that claim. *See Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 572 (5th Cir. 2012) (holding that a plaintiff's hostile-work-environment charge was not subject to tolling where it was not within the scope of the plaintiff's EEOC charge

---

[54]     *See* R. Doc. 1 at 2 ¶ 7.
[55]     *See generally id.*

alleging age discrimination).   Therefore, Stewart's claim for disability

discrimination under the LEDL is prescribed and is dismissed.


## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for

summary judgment, and dismisses plaintiff's claims WITH PREJUDICE.   As

the Court has granted defendant's motion for summary judgment,

defendant's motions *in limine* are DISMISSED WITHOUT PREJUDICE.


New Orleans, Louisiana, this  __28th__  day of January, 2020.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE